PAUL E. SALAMANCA
Deputy Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

MICHAEL S. SAWYER, Trial Attorney
Natural Resources Section
P.O. Box 7611 Washington, D.C. 20044
202-514-5273 || 202-305-0506 (fax)
Michael.Sawyer@usdoj.gov

*Attorneys for Federal Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA WILDLIFE ALLIANCE, *et al.*, <br><br>   Plaintiffs, <br><br> v. <br><br> DAVID L. BERNHARDT, Secretary of the Interior, *et al.*, <br><br>   Federal Defendants. | ) <br> ) Case No. 3:20-cv-00209-SLG <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MOTION TO DISMISS

*Alaska Wildlife Alliance v. Bernhardt et al.*,
Case No. 3:20-cv-00209-SLG
Case 3:20-cv-00209-SLG   Document 15   Filed 11/25/20   Page 1 of 16

## TABLE OF CONTENTS

BACKGROUND .................................................................................................................. 1

    I.      In 2015, The Service Prohibited Certain Hunting Practices On National Preserves. ............................................................................................. 1

    II.     In 2020, The Service Eliminated Those Prohibitions. ................................... 2

    III.    Plaintiffs Challenge The 2020 Rule Without Explaining How It Caused Them Injury. ....................................................................................... 4

STANDARD OF REVIEW ............................................................................................... 4

ARGUMENT ..................................................................................................................... 5

    I.      Plaintiffs Have Not Adequately Alleged An Injury In Fact. .......................... 6

    II.     Plaintiffs' Alleged Injuries Are Not Fairly Traceable To The 2020 Rule. ................................................................................................................ 9

CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Wright*,
  468 U.S. 737 (1984) ............................................................................................... 7

*Am. Chemistry Council v. Dep't of Transp*,
  468 F.3d 810 (D.C. Cir. 2006) ............................................................................. 11

*Am. Postal Workers Union v. Frank*,
  968 F.2d 1373 (1st Cir. 1992) ............................................................................... 7

*Am. Waterways Operators v. U.S. Coast Guard*,
  No. 18-CV-12070-DJC, 2020 WL 360493 (D. Mass. Jan. 22, 2020) ........................ 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................... 5, 8

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ............................................................................................... 6

*Ctr. for Biological Diversity v. Bernhardt*,
  946 F.3d 553 (9th Cir. 2019) .............................................................................. 4, 8

*Diamond v. Charles*,
  476 U.S. 54 (1986) ................................................................................................. 7

*Gen. Atomic Co. v. United Nuclear Corp.*,
  655 F.2d 968 (9th Cir. 1981) ................................................................................. 4

*Get Outdoors II, LLC v. City of San Diego, Cal.*,
  506 F.3d 886 (9th Cir. 2007) ................................................................................. 9

*Horne v. Flores*,
  557 U.S. 433 (2009) ............................................................................................... 5

*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014) ............................................................................... 5

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ............................................................................................... 7

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................... 5, 6, 7, 9, 10

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ....................................................................................... 6, 7

*Thompson v. McCombe*,
  99 F.3d 352 (9th Cir. 1996) ............................................................................................... 4

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990) ........................................................................................................... 6

**Regulations**

36 C.F.R. § 13.42(f) (2019) ...................................................................................................... 2

36 C.F.R. § 13.42(g) (2019) .............................................................................................. 1, 2, 9

80 Fed. Reg. 64,325 (Oct. 23, 2015) ............................................................................... 1, 2, 6, 7

85 Fed. Reg. 35,181 (June 9, 2020) ................................................................................ 2, 3, 4, 10

**Other Authorities**

5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) .................................................................................................................................. 9

*Alaska Wildlife Alliance v. Bernhardt et al.*,
Case No. 3:20-cv-00209-SLG                                                                                                          iii
Case 3:20-cv-00209-SLG   Document 15   Filed 11/25/20   Page 4 of 16

Federal Defendants respectfully submit this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiffs ask the Court to resolve an abstract dispute: whether hunting practices that are allegedly *intended* to decrease predator populations violate the National Park Service's (Service's or NPS's) Organic Act or the Alaska National Interest Lands Conservation Act (ANILCA). But Plaintiffs notably do not allege that the hunting practices in question *will* decrease predator populations, let alone that those hunting practices will decrease predator populations on national preserves that Plaintiffs have concrete plans to visit. Because Plaintiffs have failed to adequately allege standing, the Court should dismiss their Complaint for lack of jurisdiction.

## BACKGROUND

### I. IN 2015, THE SERVICE PROHIBITED CERTAIN HUNTING PRACTICES ON NATIONAL PRESERVES.

In 2015, the Service amended its regulations for sport hunting and trapping in national preserves in Alaska. Alaska; Hunting and Trapping in National Preserves, 80 Fed. Reg. 64,325 (Oct. 23, 2015) (2015 Rule). In relevant part, the 2015 Rule prohibited fourteen specific hunting methods on national preserves, *id.* at 64,343, such as using a machine gun or poison, *e.g.*, 36 C.F.R. §§ 13.42(g)(2), (6) (2019). In doing so, the 2015 Rule affirmed "State prohibitions on harvest practices by adopting them as federal regulation, and also maintain[ed] historical prohibitions on certain practices that the State ha[d] recently authorized for sport hunting of predators." 80 Fed. Reg. at 64,327.

In addition to those specific prohibitions in § 13.42(g), the 2015 Rule added a general prohibition on national preserves of State "predator reduction efforts," which were defined as "those with the intent or potential to alter or manipulate natural predator-

prey dynamics and associated natural ecological processes, in order to increase harvest of ungulates by humans." 80 Fed. Reg. at 64,343; 36 C.F.R. § 13.42(f) (2019). That general prohibition directs the Regional Director to "compile a list updated at least annually of State laws and regulations not adopted under this" general prohibition of predator reduction efforts. 80 Fed. Reg. at 64,343; 36 C.F.R. § 13.42(f)(1) (2019).

In justifying these provisions, the 2015 Rule did not rely on population-level effects. *See* 80 Fed. Reg. at 64,334 ("This rule is not based on particular wildlife population levels, and did not require the preparation of data on those levels."); *id.* at 64,338 ("The NPS thus is not required to base its management decisions regarding these restrictions only on biological considerations."). Instead, the Service based the 2015 Rule on its determination that "the NPS legal and policy framework" established a "responsibility to manage national preserves for natural processes, including predator-prey relationships, and respond[] to practices that are intended to alter those processes." *Id.* at 64,344. The 2015 Rule also prohibited certain hunting practices determined to be unsporting. *Id.* at 64,337 ("the practice of taking caribou while swimming is not consistent with fair chase and . . . it is not appropriate to allow as a sport hunting practice").

## II.  IN 2020, THE SERVICE ELIMINATED THOSE PROHIBITIONS.

In 2020, the Service eliminated the federal prohibitions on hunting practices at 36 C.F.R. §§ 13.42(f), (g) (2019). Alaska; Hunting and Trapping in National Preserves, 85 Fed. Reg. 35,181 (June 9, 2020) (2020 Rule). The Service did so after analyzing "harvest data provided by the State to the NPS." *Id.* at 35,186. Based on that harvest data, the

Service "determined that, in general, meaningful population-level impacts on black bears, brown bears, or wolves are unlikely" from eliminating the federal prohibitions. *Id.* at 35,189. As most hunting methods federally prohibited under § 13.42(g) "are also prohibited by the State of Alaska," *id.*, the Service determined that "allowing the State regulations to apply within national preserves is not anticipated to cause population-level effects," *id.* at 35,183. In sum, the 2020 Rule concluded that "the hunting practices at issue will not have a significant effect on predator and prey populations and therefore will not have the effect of predator reduction or predator control, regardless of any perception of the purpose of the hunting practices." *Id.* at 35,186.

The 2020 Rule also reached different determinations about the purpose or intent behind State management practices than the 2015 Rule. Instead of ascribing intent to the State based on the statements of individuals, the 2020 Rule concluded that the "State of Alaska's purpose in authorizing these practices is to expand hunting opportunities, rather than as part of a formal predator control or other program designed to reduce a population below sustainable levels." *Id.* at 35,186. That conclusion was supported by the State's assurance to NPS "that, in the event harvest were to increase beyond sustainable levels, the [Alaska Department of Fish and Game] would close seasons by emergency order, if immediate action was necessary, and/or recommend more conservative seasons, bag limits, and/or methods to the Alaska Board of Game for future hunting seasons." *Id.* at 35,183.

The 2020 Rule also reached a different determination about whether certain hunting practices were sporting under ANILCA. *See id.* at 35,185 ("Lacking any indication in the statute that Congress intended the phrase ''sport purposes'' to have a specialized meaning,

the NPS finds that the term was used by Congress merely to distinguish subsistence hunting from other types of hunting."). Accordingly, the Service changed its position from the 2015 Rule about whether hunting practices that violated principles of "fair chase" would be prohibited on national preserves. *Id.*

### III. PLAINTIFFS CHALLENGE THE 2020 RULE WITHOUT EXPLAINING HOW IT CAUSED THEM INJURY.

Several months ago, Plaintiffs—a consortium of thirteen wildlife groups—initiated this action challenging the 2020 Rule. Complaint, Docket 1. The Complaint contends that the 2020 Rule violates the Organic Act, ANILCA, and the Administrative Procedure Act (APA). The Complaint asserts standing to do so based on Plaintiffs' members' interests in visiting and "viewing the diverse and natural balance of wildlife" on "many of the national preserves in Alaska." Compl. ¶ 19. But the Complaint provides only conclusory allegations as to how those interests give rise to standing. *See* Compl. ¶ 20 (parroting legal requirements for standing without providing any specific factual allegations).

### STANDARD OF REVIEW

Rule 12(b)(1) provides for dismissal of an action for "lack of subject-matter jurisdiction." As a federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears, *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968–969 (9th Cir. 1981), plaintiffs bear the burden of proving the existence of the court's subject matter jurisdiction, *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). At the pleading stage, plaintiffs must meet this burden with "allegations [that] 'permit the court to infer more than the mere possibility of [jurisdiction].'" *Ctr. for*

*Biological Diversity v. Bernhardt*, 946 F.3d 553, 560 (9th Cir. 2019) (*CBD*) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)); *see also Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) ("The district court resolves a facial attack [under Rule 12(b)(1)] as it would a motion to dismiss under Rule 12(b)(6).").

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *accord Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Although specific factual allegations must be accepted as true, that tenet is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility . . . that the pleader is entitled to relief," dismissal is required. *Id.* at 679.

## ARGUMENT

"To establish standing, a plaintiff must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by a favorable ruling." *Horne v. Flores*, 557 U.S. 433, 445 (2009). "[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992). As explained below, the Complaint fails to adequately allege an injury in fact, let alone an injury in fact that is fairly traceable to the 2020 Rule.

*Alaska Wildlife Alliance v. Bernhardt et al.*,
Case No. 3:20-cv-00209-SLG

5

Case 3:20-cv-00209-SLG   Document 15   Filed 11/25/20   Page 9 of 16

## I. PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED AN INJURY IN FACT.

To plead an injury in fact, the party invoking federal jurisdiction must establish three elements: first, the "invasion of a legally protected interest"; second, that the injury is both "concrete and particularized"; and third, that the injury is "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560). The second element requires that the injury "affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. As for the third, when a plaintiff alleges future injury, such injury must be "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Lujan*, 504 U.S. at 565 n.2). Allegations of "possible" future injury are insufficient. *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). All elements of standing must exist at the time the complaint is filed. *See Lujan*, 504 U.S. at 569 n.4. As explained below, Plaintiffs' injury allegations are deficient in two ways.

*First*, Plaintiffs have not alleged a cognizable injury because they do not claim that the 2020 Rule will have any effect on their members' interests in experiencing wildlife on national preserves.[1] *See* Compl. ¶ 19. As explained above, neither the 2015 Rule nor the 2020 Rule determined that the State hunting practices in question would decrease wildlife populations on national preserves. *See supra* pp. 1–4; *see also* 80 Fed. Reg. at 64,334

---

[1] In addition to their interests based on visiting national preserves, plaintiffs also allege an interest in visiting "national parks geographically and ecologically connected to the national preserves." Compl. ¶ 19. But the Supreme Court has previously found wanting such "ecosystem nexus" interests. *Lujan*, 504 U.S. at 565.

(the 2015 Rule was "not based on particular wildlife population levels"); *id.* at 64,336 (the 2015 Rule was "not based on how many bears are harvested or whether that harvest would impact bear population levels"). Instead, the 2015 Rule was motivated by (1) the Service's determination that the State had liberalized hunting practices "wholly or in part on a desire to reduce predator populations" and a "desire to elevate survival rates of moose and caribou calves," despite the Service's skepticism about whether the State's plan would achieve its desired result, *id.* at 64,332, and (2) principles of "fair chase" in sport hunting, *id.* at 64,337.

But philosophical or ethical concerns about a hunting practice are not cognizable injuries under Article III. Despite Plaintiffs' allegation that the State's desire to reduce predators violates federal law, Compl. ¶ 89, federal courts are not venues for plaintiffs to assert a bare right "to have the Government act in accordance with law." *Allen v. Wright*, 468 U.S. 737, 754 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126–27 (2014). Nor will a "mere interest in a situation —no matter how deeply felt, or how important the issue" substitute for actual injury, *Am. Postal Workers Union v. Frank*, 968 F.2d 1373, 1375 (1st Cir. 1992), because the "presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements," *Diamond v. Charles*, 476 U.S. 54, 62 (1986). Instead, Plaintiffs must allege an injury that "actually exist[s]," *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), such as actual harm to personal plans to experience wildlife, *see Lujan*, 504 U.S. at 573 n.8.

*Alaska Wildlife Alliance v. Bernhardt et al.*,
Case No. 3:20-cv-00209-SLG

7

Case 3:20-cv-00209-SLG   Document 15   Filed 11/25/20   Page 11 of 16

Rather than allege actual harm, Plaintiffs have made a deliberate choice to focus on the intent behind the hunting practices in question, but not the effects of those practices. Like the 2015 Rule, *see supra* pp. 1–2, the Complaint expresses skepticism about whether predator reduction efforts will have their intended effect, characterizing such wildlife management plans as mere "theory." Compl. ¶ 40. Plaintiffs instead focus on the Service's prior "position that State wildlife management actions and decisions *intended* to reduce predator populations conflict with Park Service statutory mandates." *Id.* ¶ 39 (emphasis added).

In the few instances where the Complaint discusses the effects of the hunting practices in question, it does so only in conjunction with the intent behind the practices. *E.g.*, Compl. ¶ 2 (referring to "methods that increase or are intended to increase overall take of predators"); *id.* ¶ 97 ("The practice of reducing or seeking to reduce predator populations to increase human harvest of prey in national preserves is inconsistent with ANILCA."). Such ambiguous allegations about effects are insufficient to establish standing because the Complaint "must permit the court to infer more than the mere possibility of injury." *CBD*, 946 F.3d at 560 (internal quotations and citation omitted); *see also Twombly*, 550 U.S. at 555 ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, at 235–36 (3d ed. 2004)). If Plaintiffs believe that the 2020 Rule will have the effect of reducing predator population levels on national preserves their members plan to visit, they should provide specific factual allegations stating so.

*Second*, Plaintiffs have failed to establish any injury from the removal of duplicative federal prohibitions on hunting practices that are also barred under State law, as many of the hunting practices in question are. For example, Plaintiffs have provided no allegations explaining how the elimination of a federal prohibition on hunting with machine guns injures them when State law similarly prohibits hunting with machine guns. *Compare* 36 C.F.R. § 13.42(g)(6) (2019), *with* Alaska Admin. Code tit. 5, § 92.080(6). The law is clear that Plaintiffs "cannot leverage [their] injuries under certain, specific provisions to state an injury under the [rule] generally." *Get Outdoors II, LLC v. City of San Diego, Cal.*, 506 F.3d 886, 892 (9th Cir. 2007). Because Plaintiffs have no standing to challenge the elimination of federal hunting prohibitions that overlap with prohibitions under State law, the Court should dismiss their challenges to the elimination of the following provisions: 36 C.F.R. §§ 13.42(g)(1), (2), (4), (6), (7), (9).

## II. PLAINTIFFS' ALLEGED INJURIES ARE NOT FAIRLY TRACEABLE TO THE 2020 RULE.

When "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*," causation "ordinarily hinge[s] on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well." *Lujan*, 504 U.S. at 562. Where the "existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict, . . . it becomes the burden of the plaintiff to adduce facts showing that those

*Alaska Wildlife Alliance v. Bernhardt et al.*,
Case No. 3:20-cv-00209-SLG

9

Case 3:20-cv-00209-SLG   Document 15   Filed 11/25/20   Page 13 of 16

choices have been or will be made in such manner as to produce causation." *Id.* (internal quotations and citation omitted).

Because the 2020 Rule does not regulate Plaintiffs, they have a heightened burden to prove causation, as their claimed injuries depend on how third parties not before the Court—hunters and the State—will respond to the 2020 Rule. But the Complaint is devoid of any allegations about how these third parties will respond to the 2020 Rule. Notably, Plaintiffs do not allege that—under the 2020 Rule—hunters will engage in previously prohibited practices on national preserves, let alone do so in areas of those national preserves that Plaintiffs' members have plans to visit. Similarly, the Complaint does not allege how the State will respond to the 2020 Rule, and certainly does not contradict the State's assurance to NPS "that, in the event harvest were to increase beyond sustainable levels, the [Alaska Department of Fish and Game] would close seasons by emergency order, if immediate action was necessary, and/or recommend more conservative seasons, bag limits, and/or methods to the Alaska Board of Game for future hunting seasons" in order to ensure healthy wildlife populations on national preserves. 85 Fed. Reg. at 35,183. Because Plaintiffs have failed to allege how these third parties will act, they have failed to carry their "burden . . . to adduce facts showing that those" parties will act "in such manner as to produce causation." *Lujan*, 504 U.S. at 562.

Additionally, any injury Plaintiffs may claim is caused by these same third parties not before the Court and thus is not fairly traceable to the Service. The Service is neither hunting these predators nor implementing a wildlife management plan intended to reduce their population levels. Instead, the Service has simply declined to preempt these third

parties from authorizing or engaging in those activities.  In such situations, courts have rejected standing, holding that the claimed injuries were not fairly traceable to the federal government, as they were caused by state or local governments.  *See Am. Chemistry Council v. Dep't of Transp*, 468 F.3d 810, 817 (D.C. Cir. 2006) (finding no causation where a federal agency failed to preempt local ordinance causing harm); *Am. Waterways Operators v. U.S. Coast Guard*, --- F. Supp. 3d ---, No. 18-CV-12070-DJC, 2020 WL 360493, at *4 (D. Mass. Jan. 22, 2020) (finding no causation where injury from state "regulations involves multiple levels of attenuation" to the challenged federal action). The Court should similarly hold that any injuries suffered by Plaintiffs were caused by third parties not before the Court and thus are not fairly traceable to the Service.

## CONCLUSION

For the foregoing reasons, the Service respectfully requests that the Court dismiss Plaintiffs' Complaint for lack of jurisdiction under Rule 12(b)(1).

Respectfully submitted this 25nd day of November, 2020.

> PAUL E. SALAMANCA
> Deputy Assistant Attorney General
> United States Department of Justice
> Environment and Natural Resources Div.
>
> */s/ Michael S. Sawyer*
> MICHAEL S. SAWYER (D.C. Bar No. 1009040)
> Trial Attorney
> Natural Resources Section
> P.O. Box 7611 Washington, D.C. 20044
> 202-514-5273 || 202-305-0506 (fax)
> Michael.Sawyer@usdoj.gov
>
> *Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2020, a copy of the foregoing notice was served by electronic means on all counsel of record by the Court's CM/ECF system.

> */s/ Michael S. Sawyer*
> Michael S. Sawyer