James H. Lister (ABA #1611111)
Birch Horton Bittner & Cherot
1100 Connecticut Ave., NW,
Ste. 825
Washington, D.C. 20036
Telephone: (202) 659-5800
Facsimile: (202) 659-1027
Email: jlister@dc.bhb.com

*Attorneys for Proposed Defendant-Intervenor*
*Alaska Professional Hunters Association*
*and Sportsmen's Alliance Foundation*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

_____

| | |
|---|---|
| ALASKA WILDLIFE ALLIANCE *et al.*,    ) | |
| ) | |
| Plaintiffs,    ) | Case No. 3:20-cv-00209-SLG |
| v.    ) | |
| ) | |
| DAVID BERNHARDT, in his official capacity as    ) | **UNOPPOSED MOTION TO** |
| Secretary of the Department of Interior, *et al.*,    ) | **INTERVENE BY ALASKA** |
| ) | **PROFESSIONAL HUNTERS** |
| Federal Defendants,    ) | **ASSOCIATION AND** |
| ) | **SPORTSMEN'S ALLIANCE** |
| and    ) | **FOUNDATION** |
| ) | |
| SAFARI CLUB INTERNATIONAL,    ) | |
| ) | |
| Intervenor-Defendants    ) | |

---

### MOTION TO INTERVENE BY ALASKA PROFESSIONAL HUNTERS ASSOCIATION AND SPORTSMEN'S ALLIANCE FOUNDATION

Alaska Professional Hunters Association ("APHA") and Sportsmen's Alliance

Foundation ("SAF") respectfully file this unopposed motion to intervene as a defendant.

1

APHA seeks to protect its interests and the interests of its members who earn a living guiding hunters on National Preserves in Alaska. The lawsuit filed by Plaintiffs Alaska Wildlife Alliance et al. ("Wildlife Alliance") challenges a decision by the National Park Service ("NPS") in 2020 to not preempt application of certain State-authorized hunting and trapping to Alaska National Preserves, through repealing a 2015 NPS rule which did preempt.[1] SAF is a broader hunting organization which consists of hunters across the country and in Alaska who share APHA's interests in utilizing State-authorized hunting and trapping practice. Additionally, SAF and its sister organization Sportsmen's Alliance ("SA") are an "association of associations," and APHA is an organizational member of SAF/SA. Thus SAF/SA seek to defend the interests of their organizational member APHA by participating alongside APHA in this matter.

Counsel for Proposed Defendant-Intervenors, APHA and SAF, has conferred with counsel for the Wildlife Alliance Plaintiffs and the Federal Defendants National Park Service, et al. (collectively, "NPS") regarding this motion.[2] Plaintiffs do not oppose Proposed Defendant-Intervenors' motion. As is customary, Federal Defendants take no position.

---

[1] Some of these members, located in remote Alaska, rely on hunting ungulate prey species to feed their families as well.

[2] Existing defendant-intervenor Safari Club International ("SCI"), which was a co-plaintiff with APHA in the previous litigation concerning the 2015 Rule, does not oppose this motion for intervention. APHA and SAF would be amenable to filing joint briefs with SCI, as they did as co-plaintiffs in the procedurally-consolidated 2015 Rule lawsuits.

As discussed below, this lawsuit is a new chapter in a broader continuing litigation over whether NPS should preempt the application of State hunting and trapping rules on Alaska National Preserves. In the prior chapter, APHA and SAF were plaintiffs seeking judicial review of the 2015 NPS preemption rule, and the Wildlife Alliance members were defendant-intervenors. In the current chapter, the Wildlife Alliance have gone from being defendant-intervenors supporting the 2015 NPS preemption rule to plaintiffs challenging the 2020 NPS repeal rule, and APHA and SAF, which were plaintiffs challenging the 2015 NPS preemption rule, seek to intervene to defend the 2020 NPS repeal rule. This unopposed motion should be granted because APHA and SAF satisfy both the intervention as a right and permissive intervention tests, as discussed below.[3]

## NATURE OF THE CASE AND HISTORY OF LITIGATION AND RULEMAKING

Plaintiffs, Alaska Wildlife Alliance, *et al.*, initiated this suit in an attempt to overturn NPS's June 2020 rule which repealed federal restrictions of hunting on National Preserves. *Alaska; Hunting and Trapping in National Preserves*, 85 Fed. Reg. 35181 ("Repeal Rule"). Here is a    timeline of the procedural events leading up to this case and showing APHA/SAF's participation:

---

[3] APHA is also filing a motion to extend the time under Fed.R.Civ.P. 24(c) for it to file its Answer until one week after the Federal Defendant file their Answer. Seeing the Federal Defendants' Answer will aid APHA in preparing its own Answer. Additionally, if the Federal Defendants' pending motion to dismiss for lack of jurisdiction is granted, then there is no need for any defense-side party to prepare answers.

*Alaska Wildlife Alliance v. Bernhardt*
No. 3:20-cv-00209-SLG                  3

1. NPS published a final rule in October of 2015 which amended its regulations for hunting and trapping on national preserves in Alaska, including by adding provisions which specifically preempted identified hunting practices allowed by the State of Alaska and also a provision that generally preempted any other State hunting practices that meet a broad definition of "predator reduction." 80 Fed. Reg. 64325 ("2015 Rule").

2. After the 2015 Rule was published, APHA and SAF, as co-plaintiffs, sought judicial review of the 2015 rule preempting state hunting rules in the District Court on February 10, 2017. *APHA v. Jewell*, 3:17-cv-00026-SLG. APHA and SAF's judicial review lawsuit challenging the 2015 rule was procedurally consolidated along with cases brought by the State of Alaska and by Safari Club International ("SCI").[4]

3. Most of the members of the Alaska Wildlife Alliance coalition, the plaintiffs in the present case, participated as defendant-intervenors in the consolidated cases challenging the 2015 Rule (including APHA's and SAF's lawsuit).[5] APHA and

---

[4] *State of Alaska v. Jewell*, No. 3:17-cv-00013, *Safari Club International v. Jewell*, No. 3-17-cv-00014, and *APHA v. Jewell*, No. 3:17-cv-00026 were procedurally consolidated under case number 3:17-cv-00013.

[5] Among the current plaintiffs, Alaska Wildlife Alliance, Alaskans For Wildlife, Center for Biological Diversity, Copper Country Alliance, Defenders of Wildlife, Denali Citizens Council, The Humane Society of The United States, National Parks Conservation Association, Northern Alaska Environmental Center, Sierra Club, and Wilderness Watch all participated as defendant-intervenors in the previous litigation. *See* motion to intervene filed in APHA and SAF's judicial review lawsuit 3:17-cv-00013 (DE 13).

SAF did not oppose their intervention (just as the Alaska Wildlife Coalition does not oppose intervention here).

4. On August 14, 2017, in parallel to its litigation efforts, APHA and SAF petitioned NPS to begin a new rulemaking to repeal the preemption provisions of the 2015 NPS rule. Exhibit A, Moore Decl. ¶ 7; Exhibit D, Petition for New Rulemaking. In a letter dated September 26, 2017, NPS responded to APHA and SAF's petition stating that NPS was, in fact, beginning a new rulemaking to consider repealing the preemptions in the 2015 Rule. Exhibit A, Moore Decl. ¶ 7; Exhibit E, NPS Response to Petition for New Rulemaking.

5. On May 22, 2018, NPS published a proposed rule repealing the preemption portions of the 2015 Rule. *Alaska; Hunting and Trapping in National Preserves*, 83 Fed. Reg. 23621. APHA and SAF filed comments with NPS supporting the proposed repeal rule. Late in the rulemaking, after some members of the Wildlife Alliance coalition presented their opposition to the proposed repeal rule to the Office of Management and Budget ("OMB"), APHA and SAF presented counter-arguments to OMB in favor of finalizing the proposed repeal rule.

6. NPS published the final 2020 repeal rule on June 9, 2020, repealing the preemption provisions of the 2015 Rule challenged by APHA and SAF. *Alaska; Hunting and Trapping in National Preserves*, 85 Fed. Reg. 35181 ("Repeal Rule"). APHA and SAF promptly submitted a motion to dismiss as moot its February 2017 lawsuit for judicial review of the preemption provisions of the 2015 Rule. The Court granted

that motion.[6] The other previously consolidated cases brought by the State and SCI challenging other unrepealed parts of the 2015 Rule continue.

7. On August 26, 2020, the Alaska Wildlife Alliance members filed the present lawsuit for judicial review of the 2020 repeal rule. Procedurally, this case is still in its early stages. NPS filed a Rule12(b) motion to dismiss for lack of jurisdiction, which is still being briefed. No actions on the merits of the case have been taken. SCI, which filed another one of the three cases challenging the 2015 Rule, was granted intervention as a defendant. NPS has not yet filed its Answer or the Administrative Record.

## FACTUAL BACKGROUND

APHA is a non-profit organization that is dedicated to wildlife conservation and protecting Alaska's hunting heritage, and is the professional trade association for Alaska's hunting guides. Exhibit A, Moore Decl. ¶ 1. APHA members are in the business of serving client hunters as guides for a fee, using their guiding and hunting expertise. *Id.* at ¶ 3. All guides must possess a professional guide license and pass stringent exams while documenting time in the field and harvest of animals. *Id*. All or virtually all APHA members personally hunt as well as guide. *Id.* Some APHA members live in remote and economically challenged areas of Alaska where they guide client hunters. *Id.* at ¶ 4. National Preserves are a vitally important part of guided hunting in Alaska.

---

[6] DE 198.

*Alaska Wildlife Alliance v. Bernhardt*
No. 3:20-cv-00209-SLG                   6

As a trade association of Alaska's hunting guides, APHA works to advance the interests of the guides by preserving opportunities to hunt, advocating scientifically-supported conservation strategies, and advocating policies that permit guides to conduct their business in a cost-effective efficient manner. *Id.* at ¶ 3.

SAF is a non-profit organization dedicated to protecting the hunting heritage of America's sportsmen and women to hunt, trap, and fish. Exhibit C, Tague Decl. ¶ 1. Including their more than 300 member organizations, SAF and its sister organization SA represent over a million individuals across the country. *Id*. at ¶ 3. APHA is an organizational member of SAF/SA, and as discussed above, is itself an associated devoted to the guiding of hunts in Alaska, particularly on federal land. SAF has individual members who live and hunt in Alaska. *Id.* SAF achieves its mission through, among other things, public education, issue research, and participation in legal proceedings that affect hunting, trapping, fishing, and wildlife management. *Id*. at ¶ 4. SAF members have professional and economic interests in hunting as well. *Id.* at ¶ 3. SAF is also concerned by the impact this case may have on public lands in the remainder of the United States. *Id.* at ¶ 5. If NPS can federalize hunting on state lands in Alaska, despite the jurisdictional scheme codified in the Alaska National Interest Lands Conservation Act ("ANILCA"), then NPS is well positioned to preempt hunting rules on federal lands in other states where there are no statutes protecting the state's authority over hunting. *Id.*

The Alaska Statehood Act of 1958 and ANICLA established a complex jurisdictional balance regarding the rules for hunting on federal lands in Alaska in general

and National Preserves in particular.[7] The 2015 NPS Rule operated as both a general preemption of a broad category of State hunting regulations and a specific preemption of certain hunting practices, such as summer hunting of wolves and coyotes and hunting bear with bait. The 2015 Rule gave NPS the authority to preempt any state hunting regulation it saw as "predator reduction." 80 Fed. Reg. at 64343 (adopting 36 CFR 13.42(f), repealed by 85 Fed. Reg. 35181 (June 9, 2020)). Both types of the 2015 Rule's preemption, specific and general, negatively impacted APHA and its members. Exhibit A, Moore Decl. ¶ 6.

APHA and SAF frequently appear before the Alaska Board of Game on behalf of its members. *Id.* at ¶ 5. The Board of Game establishes hunting seasons, bag limits, and regulates the methods and means for hunting in the state. *Id.* The Board also sets policy and the direction for the management of the state's wildlife resources. *Id.* The 2015 NPS Rule effectively added a second layer of regulation on top of the Board of Game's regulations. *Id.* at ¶ 6. By preempting both as to specific present State hunting regulations and future State hunting regulations meeting the vague "predator reduction" criteria, the 2015 NPS Rule created uncertainty for SAF, APHA, and their members. *Id.*; Exhibit C, Tague Decl. ¶ 5. SAF and APHA members lost the ability to guide clients in

---

[7] See § 6(e) of the Alaska Statehood Act of 1958, P.L. 85-508; Alaska National Interest Lands Conservation Act ("ANILCA"), P.L. 96-487 (1980). ANILCA § 1314 provides that ANILCA does not expand or diminish the State's authority over the "management of *fish and wildlife* on the public lands, except as may be provided in Title VIII of this act [regarding subsistence hunting by rural residents]" (emphasis added) and does not "amend the Alaska constitution." 16 U.S.C. § 1302(a). The next sentence of § 1314 provides that the statute does not expand or diminish the federal government's authority "over the management *of the public lands*" (emphasis added). *Id.* at (b).

summer hunting of wolves and coyotes, and to engage in other specifically preempted methods. Exhibit A, Moore Decl. ¶ 6. APHA and SAF could not count on State approval of hunting methods but also had to factor in the claimed power of NPS to preempt any State rules that NPS deemed "predator reduction." *Id.* SAF, APHA, and their members had to juggle two conflicting regulatory regimes applicable to the same lands (Alaska National Preserves). *Id.* The adoption by NPS of the 2020 Repeal Rule eliminated these concerns, but success by the Wildlife Alliance Plaintiffs in the present lawsuit seeking to invalidate the 2020 Repeal Rule would reinstate the 2015 NPS Rule and re-expose APHA and SAF to these harms.

APHA members earn their income from guiding hunters on both federal and state lands. *Id.* at ¶ 3. The guiding business is dependent on the activities and services available to the client. Exhibit B, Klutsch Decl. ¶ 3. The ability to hunt wolves and coyotes during the summer months impacts the success of guided hunts. *Id.* at ¶ 3-4. The broader the hunts available, the more successful APHA guides will be. *Id.* at ¶ 3.

The specific and general preemptions of the 2015 Rule also had an incidental effect on the APHA members' ability to hunt for food for their own families in rural Alaska.[8] Living and working in remote Alaska, many of APHA's members hunt prey

---

[8] Prey species such as ungulates (e.g., moose, caribou, deer, elk and reindeer) are the species of wildlife in Alaska most suitable for hunting for food because they have the highest quantities of quality meat that humans readily and satisfactorily consume. Exhibit B, Klutsch Decl. ¶ 5. Predator species such as wolves, coyotes and bear are less suitable for consumption as food, although they can be and are consumed for food. Rural Alaskans, including APHA members, rely on these species for cash income from guided hunts as well as fur and other usable materials. *Id.* at ¶ 3-4. The number of prey species

species (ungulates) in order to feed themselves and their family. *Id*. at ¶ 5. The 2015 Rule exempted hunting for food done by federally qualified subsistence users, which include some APHA members (not all) when hunting to feed their own families. But even when an APHA member is engaged in Federally qualified subsistence hunting, there is an impact from predation by predator species (coyotes, bears, wolves) on the available prey. Hunting of predator species reduces this impact. Thus the preemption of State-authorized hunting methods on National Preserves, even if only binding on non-subsistence hunters, would negatively impact all hunting, both subsistence and non-subsistence, Klutsch Dec., at ¶ 5.

## **ARGUMENT**

APHA and SAF have a great deal at stake in continuing to defend their interests and the interests of its members in hunting on National Preserves in Alaska in this series of litigations over the preemption of State hunting rules between the same parties. Thus, APHA and SAF's unopposed motion to intervene should be granted so they may continue to protect their interests. APHA and SAF should be granted intervention as of right under Rule 24(a)(2), or in the alternative, permissively under Rule 24(b).

---

available for hunting for food by humans depends in large part on the number of predator species in the same and neighboring areas. *Id.* at ¶ 5.

*Alaska Wildlife Alliance v. Bernhardt*
No. 3:20-cv-00209-SLG                    10

**A.** **APHA and SAF Should be Granted Intervention of Right Under Federal Rule of Civil Procedure 24(a).**

Because of its significant interests at risk in this lawsuit and the federal defendants' inadequate representation of those interests, APHA and SAF are entitled to intervention of right:

> On timely motion, the court must permit anyone to intervene who: . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). This Circuit recognizes four prerequisites to intervention of right:

> (1) [T]he intervention is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest.

*Gonzales v. Arizona*, 485 F.3d 1041, 1051 (9th Cir. 2007) (quotations omitted). The Court should "construe Rule 24(a) liberally in favor of potential intervenors." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006). "In addition to mandating broad construction, [the court's] review is guided primarily by practical considerations, not technical distinctions." *Sw. Ctr. For Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001). Proposed Defendant-Intervenors easily meets all criteria for intervention of right under Rule 24(a) in this lawsuit.

**A.    This Motion to Intervene is Timely.**

As this lawsuit is in the earliest stages, this motion is plainly timely.[9] "Timeliness is to be determined from all the circumstances." *NAACP v. New York*, 413 U.S. 345, 366 (1973). Plaintiff filed its Complaint on August 26, 2020. Defendants have filed a motion to dismiss due to lack of jurisdiction which has not yet been resolved.[10] As such, the Federal Defendants have not yet filed an Answer to the Complaint or the Administrative Record. The Court has not entered a scheduling order. The intervention is unquestionably timely.

**B.    APHA and SAF Have a Significant Interest in the Subject Matter of the Underlying Action, and Denial of this Motion would Impair or Impede APHA and SAF's Ability to Protect Their Interests.**

APHA and SAF have significant protectable interests in this action as organizations with members who earn their income guiding hunts on National Preserves throughout Alaska, and often hunt for food to feed themselves and their families. APHA is not only a non-profit dedicated to wildlife conservation and protecting Alaska's hunting heritage, but is also the only professional trade association for Alaska's hunting guides. As such, the continued success of APHA depends on the continued success of its member as hunting guides. APHA often represents its members' interests in front of the NPS and Alaska Board of Game. Without intervening in this case, APHA will be unable to continue to defend its

---

[9] The unforeseen economic constraints created by the COVID-19 pandemic prevented this motion to intervene from being filed even earlier.

[10] APHA/SAF do not wish to participate in the briefing on the Federal Defendants' motion to dismiss.

*Alaska Wildlife Alliance v. Bernhardt*
No. 3:20-cv-00209-SLG                    12

members' interests from the Wildlife Alliance Plaintiffs efforts to reimpose the restrictions of the 2015 Rule.

Though Rule 24(a) itself does not define the required nature of the interest at stake, the Supreme Court has recognized that it must be a "significantly protectable interest." *Donnelly*, 159 F.3d 405, 409 (9th Cir. 1998). This Circuit has found this criterion satisfied where "[a]n applicant has a significant protectable interest in an action if (1) it asserts an interest that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claims." *Cal. ex rel. Lockyer*, 450 F.3d at 441 (quotations omitted) (citing *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)); *see also Sierra Club v. U.S. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993) ("It is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue.") Clearly these standards are met here. APHA members have a legally protected interest to earn a living guiding hunt on National Preserves which is the very focus of the plaintiffs' lawsuit. APHA and SAF also has a legally protected interest in defending a previously won favorable judgement. Plaintiffs' lawsuit essentially challenges a previous favorable regulatory judgment (the Repeal Rule) which APHA and SAF were successful in obtaining through the combination of rulemaking and litigation efforts by APHA and SAF recounted above. APHA and SAF's interests in this lawsuit are neither undifferentiated nor generalized.

Further, any success by Plaintiffs in this case will, as a practical matter, impair or impede APHA and SAF's ability to protect their interests. "If an absentee would be

substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24, advisory comm. note to 1966 amendment (quoted in *Cal. ex rel. Locker v. U.S.*, 450 F.3d 436, 442 (9th Cir. 2006)). Here, if Plaintiffs prevail and the Court determines to vacate the 2020 NPS Repeal Rule, the legal effect would be to reinstate the 2015 NPS Rule that APHA and SAF challenged in the litigation that became moot when NPS adopted the 2020 Repeal Rule. Such reinstatement of the 2015 NPS Rule would re-expose APHA and SAF to the same harms they litigated against from 2017 to 2020 in the prior case before this Court. Therefore, denial of this Motion to Intervene would impair APHA and SAF's ability to protect their significant interest in hunting on National Preserves.

## C. APHA and SAF's Interests are not Adequately Represented by the Existing Parties.

APHA and SAF are not adequately represented by the parties already present in this lawsuit. An applicant for intervention must show that representation of his interest by existing parties "may be" inadequate. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538, n.10 (1972). Only a "minimal" showing of the possibility of inadequate representation needs to be made. *Id.; see Citizens for Balanced Use v. Montana Wilderness Ass'n,* 647 F.3d 893, 900 (9th Cir. 2011) (discussing *Trbovich*). Here, the named defendants (NPS) have just executed a U-turn, from defending its 2015 preemption rule in prior litigation brought by APHA and SAF as a plaintiffs, to defending their 2020 rule largely repealing the 2015 rule. This circuit has held that a federal defendant's "prior litigation position adverse to" the proposed intervenor was a

"sufficient reason to doubt the adequacy" of representation because the federal defendant may be unable or unwilling to vigorously pursue all available arguments in support of the intervenor's interest. *Citizens for Balanced Use* at 900-01. The Court cannot presume that "[NPS] will undoubtedly make all of [APHA's and SAF's] arguments, nor… that [NPS] is capable of making and willing to make such arguments." *Id.*

Although not necessary to establish inadequacy of representation, here there is also the added factor of the recent (January 20, 2021) change in leadership of NPS. Although NPS's rule is currently in favor of APHA and SAF, the normal tension between the regulator and the regulated is always present, and there can be no assurance that the future rulemakings of NPS will favor APHA, especially during a change in administration.[11]

Any presumption that the government represents its citizens as *parens patriae* does not apply, or at least has been rebutted, because APHA and SAF have narrow economic interests that are not shared by federal defendants. *Southwest Ctr. For Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir.2001). Where a private plaintiff challenges the actions of a defendant governmental regulator charged with representing the broader public

---

[11] While the federal defendants may defend the sufficiency of their actions in withdrawing the 2015 hunting restrictions on National Preserves, they will continue in their regulatory function regardless of the outcome of this lawsuit. APHA, on the other hand, risks the loss of income, as hunts will become narrower and potentially less successful. APHA has much more at stake than the named defendants. *See B. Fernandez & Hnos., Inc., v. Kellogg USA, Inc*., 440 F.3d 541, 546 (1st Cir. 2006) ("Asymmetry in the ***intensity*** … of interest can prevent a named party from representing the interests of the absentee.") (quotation omitted, emphasis added).

interest, an applicant defendant-intervenor who has narrower and parochial interests and is the particular beneficiary of the challenged regulatory action and/or undertakes the activity authorized by the regulatory action, will often clear the "minimal" *Trbovich* standard.[12] APHA and SAF have unique and detailed knowledge of, and expertise in the hunting practices in Alaska and would be able to provide a "vigorous and helpful supplement to the [governmental agency's] defense." *NRDC v. Costle*, 561 F.2d 904, 912-13 (D.C.Cir.1977) (noting this factor in finding representation may be inadequate).

There is one existing Defendant-Intervenor, SCI. APHA and SAF would be amicable to filing joint briefs with SCI, as the three did throughout the 2017 litigation challenging the 2015 Rule. Further, APHA, SAF, and SCI share related but different interests in the outcome of the litigation.[13] While SCI also represent hunters, its focus is purely recreational hunting. APHA's members, on the other hand, earn their living guiding hunts and often hunt for food. As a purely private organization, and a direct competitor to SAF in the hunting association field, SCI is not charged with representing any broad public interest, and certainly is not charged with representing APHA's narrow interests in earning a living through guiding hunts or SAF's interests in representing hunters generally.

---

[12] The government interest in this case lies more in the procedural requirements of the Administrative Procedure Act whereas APHA's interest lies in the question of whether hunting practices should be restricted on National Preserves. *Forest Service Council v. U.S. Forest Service,* 66 F.3d 1489, 1499 (9th Cir. 1995). The governmental defendant is not bound to advocate remedies that minimize impact on private parties impacted by the litigation. *Id.* (the government "is not charged with a duty to represent these asserted [intervenor] interests in defending against the issuance of an injunction."); see *Mausolf v. Babbitt*, 85 F.3d 1295, 1303-1304 (8th Cir. 1996).

[13] There is no presumption of accurate representation between private parties.

*Alaska Wildlife Alliance v. Bernhardt*
No. 3:20-cv-00209-SLG                    16

APHA and SAF have satisfied its "minimal" burden of showing that representation "may" be inadequate, so invention as of right should be allowed. *Trbovich*, 404 U.S. at 538, n. 10.

## IV. APHA and SAF Also Satisfy Rule 24(b) Permissive Intervention Criteria.

In the alternative, APHA and SAF request permissive intervention under Rule 24(b):

> On timely motion, the court may permit anyone to intervene who:…has a claim or defense that shares with the main action a common question of law or fact…. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b).[14] "The permissive nature of such intervention necessarily implies that, if intervention is denied, the applicant is not legally bound or prejudiced by any judgment that might be entered in the case." *Railroad Trainmen v. B&O Railroad*, 331 U.S. 519, 524 (1947).

Unlike the standard for intervention of right, permissive intervention only requires that an intervenor's "claim or defense and the main action have a question of law or fact in common. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv*., 630 F.3d 1173 (9th Cir. 2011). Here, permissive intervention is appropriate even if the Court declines the unopposed motion to intervene as of right.

---

[14] Permissive intervention is not a substitute for intervention of right. If the party qualifies for intervention under Rule 24(a), the Court must grant that status. Fed. R. Civ. P. 24(a).

*Alaska Wildlife Alliance v. Bernhardt*
No. 3:20-cv-00209-SLG                    17

APHA and SAF's defense of the 2020 rule's repeal of the preemption provisions of the 2015 Rule has multiple questions of law and fact in common with the main action. Proposed Defendant-Intervenors expects to argue, *inter alia*, that the Federal Defendants' decision was legally sound, which will likely be a major issue between plaintiffs and the Federal Defendants, (if the Federal Defendants defend the 2020 repeal rule) based on all the facts. Intervenors in the Ninth Circuit satisfy the commonality standard by "assert[ing] defenses of the [challenged agency action] directly responsive to the claims of injunction asserted by plaintiffs." *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110 (9th Cir. 2002).[15]

Conversely, denial of this motion to intervene will result in substantial prejudice to APHA, SAF, and their members, as no named parties currently represent APHA's significant protectable interest in earning income by guiding hunts on Alaska National Preserves. Without being a named party in this lawsuit, APHA and SAF would have no right to appeal a potential adverse ruling by this Court affecting the validity these hunting seasons and practices.

Regarding the discretionary aspect of permissive intervention, it would be unjust to open the courthouse doors to allow plaintiffs to challenge hunting practices APHA and SAF members rely on without also opening the courthouse doors to allow APHA and SAF to defend themselves.

---

[15] *Kootenai* is yet another 9th Circuit intervention cases which was modified on another issue by the decision in *Wilderness Soc.*, 630 F.3d at 1173, to allow private party intervention in the liability phase of NEPA cases.

Finally, as discussed above, this lawsuit is a continuation of the 2017 consolidated case in which APHA and SAF were plaintiffs, on the exact same topic. With essentially all other parties that participated in the 2017 lawsuit already participating in this case, APHA and SAF should be granted intervention. The severity of potential impacts upon APHA and SAF weighs strongly in favor of allowing its participation as a party.

As noted *supra*, APHA and SAF's motion to intervene is timely, and intervention will not unfairly prejudice the parties or cause undue delay (*e.g.*, APHA and SAF will abide by all briefing schedules and makes this motion prior to any significant substantive motions). The substantial potential impacts upon APHA, SAF, and their members weighs strongly in favor of allowing its participation as a party. Accordingly, the court should grant permissive intervention.

## **CONCLUSION**

For the foregoing reasons, APHA and SAF respectfully asks the court to grant their unopposed motion to intervene as defendants.

 Dated February 24, 2021

<div style="margin-left:50%">

Respectfully submitted,

*/s/James H. Lister*
James H. Lister (AK Bar 1611111)
Nicole M. Bayne (CA Bar 328392) *
Birch, Horton, Bittner, & Cherot, P.C.
1100 Connecticut Ave., NW, Suite 825
Washington, D.C. 20036
(202) 659-5800
jlister@dc.bhb.com

</div>

*Application for pro hac vice status
forthcoming.*

*Counsel for Applicant Defendant-Intervenors Alaska
Professional Hunters Association and Sportsmen's
Alliance Foundation*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of February, 2021, a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF System, which will automatically transmit a copy of the filing to all counsel registered with the CM/ECF System.

/s/ James H. Lister
James H. Lister