# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA WILDLIFE ALLIANCE, *et al.*,<br><br>              Plaintiffs,<br><br>        v.<br><br>DEBRA HAALAND, Secretary of the Interior, *et al.*,<br><br>              Defendants,<br><br>       and<br><br>SAFARI CLUB INTERNATIONAL, *et al.*,<br><br>              Intervenor-Defendants. | Case No. 3:20-cv-00209-SLG |

## ORDER RE MOTION TO STAY

Before the Court at Docket 50 is Defendants'[1] *Motion to Stay Case Until June 15, 2022*. Plaintiffs[2] responded in opposition at Docket 54, Defendants replied at Docket 55, and Intervenor-Defendants[3] responded in non-opposition at

---

[1] Debra Haaland, in her official capacity as Secretary of the U.S. Department of the Interior; George Wallace, in his official capacity as Assistant Secretary for Fish and Wildlife and Parks; U.S. Department of the Interior; and National Park Service.

[2] Alaska Wildlife Alliance, Alaska Wilderness League, Alaskans for Wildlife, Center for Biological Diversity, Coalition to Protect America's National Parks, Copper Country Alliance, Defenders of Wildlife, Denali Citizens Council, The Humane Society of the United States, National Parks Conservation Association, Northern Alaska Environmental Center, Sierra Club, and Wilderness Watch.

[3] Safari Club International, Alaska Professional Hunters Association, and Sportsmen's Alliance

Docket 56. Oral argument was not requested and was not necessary to the Court's determination.

## BACKGROUND

Plaintiffs, a number of environmental organizations, challenge a 2020 National Park Service ("NPS") rule addressing whether certain sport hunting practices permitted under state law can occur within national preserves in Alaska.[4] The challenged rule replaced a 2015 rule that (1) prohibited certain sport hunting practices that were or could be authorized by the State of Alaska in national preserves; and (2) prohibited state-authorized predator reduction efforts in Alaska preserves.[5] The 2020 rule reversed course, amending NPS regulations to permit predator reduction efforts and the aforementioned hunting practices in Alaska preserves if authorized under state law.[6] The NPS explained that the 2020 rule "complements State regulations by more closely aligning harvest opportunities in national preserves with harvest opportunities in surrounding lands" and brings the NPS's approach more in line with the Alaska National Interest Lands Conservation

---

Foundation.

[4] Docket 1 (Compl.); *see also* Alaska; Hunting and Trapping in National Preserves, 85 Fed. Reg. 35,181 (June 9, 2020) (codified at 36 C.F.R. pt. 13) [hereinafter "2020 Rule"].

[5] *See* Alaska; Hunting and Trapping in National Preserves, 80 Fed Reg. 64,325 (Oct. 23, 2015) (previously codified at 36 C.F.R. pt. 13) [hereinafter "2015 Rule"]. The prohibited practices included taking black bears with artificial light at den sites, taking brown bears and black bears over bait, taking wolves and coyotes during the denning season, taking swimming caribou or taking caribou from motorboats under power, and using dogs to hunt black bears. *Id.* at 64,325.

[6] 2020 Rule, 85 Fed. Reg. at 35,182.

Case No. 3:20-cv-00209-SLG, *Alaska Wildlife Alliance, et al. v. Haaland, et al.*
Order re: Motion to Stay
Page 2 of 14
Case 3:20-cv-00209-SLG   Document 61   Filed 03/15/22   Page 2 of 14

Act of 1980 (ANILCA), under which "the NPS has consistently deferred to State laws, regulations, and management of hunting and trapping . . . in national preserves."[7]

Plaintiffs filed this action seeking vacatur of the 2020 rule on August 26, 2020, contending that the rule violates ANILCA, the National Park Service Organic Act, and the Administrative Procedure Act.[8] The Court permitted Safari Club International, the Alaska Professional Hunters Association, and the Sportsmen's Alliance Foundation to participate as intervenor-defendants.[9] Defendants and Intervenor-Defendants filed their answers to Plaintiffs' complaint in early October 2021, and Plaintiffs filed their opening brief on December 16, 2021.[10] Prior to filing their answer, Defendants sought and were granted multiple extensions, and Defendants recently received another extension for their yet-unfiled merits briefing.[11]

On February 17, 2022, the Assistant Secretary for Fish and Wildlife and Parks directed the NPS in a memorandum "to reassess the factual, legal, and

---

[7] *Id.*

[8] *See* Docket 1; Docket 47 at 9, 26 (Pls.' Opening Br.).

[9] *See* Docket 14 (Order re: Mot. to Intervene); Docket 25 (Order re: Mot. to Intervene).

[10] Docket 40 (Defs.' Answer); Docket 41 (Intervenor-Defs.' Answer); Docket 47.

[11] *See* Docket 9 (Defs.' Unopposed Mot. to Extend Responsive Pleading & Admin. R. Deadlines); Docket 30 (Defs.' Unopposed Mot. to Extend Answer Deadline); Docket 36 (Defs.' Unopposed Mot. to Extend Answer Deadline); Docket 48 (Defs.' Mot. to Extend Briefing Schedule).

Case No. 3:20-cv-00209-SLG, *Alaska Wildlife Alliance, et al. v. Haaland, et al.*
Order re: Motion to Stay
Page 3 of 14
Case 3:20-cv-00209-SLG   Document 61   Filed 03/15/22   Page 3 of 14

policy conclusions that underlie the 2020 rule and to transmit, by June 1, 2022, a proposed rule to the Office of Management and Budget for publication."[12] In particular, NPS was directed to focus its reconsideration on public safety concerns associated with bear baiting and whether the 2020 rule runs afoul of ANILCA or NPS management policies.[13]

Based on the February 17 memorandum, Defendants now ask the Court to stay proceedings in this case until June 15, 2022, "to allow NPS to complete its reassessment of the legal, factual, and policy conclusions supporting the 2020 rule."[14]

## LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."[15] "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are

---

[12] Docket 52 at 1 (Memorandum from Assistant Sec'y for Fish & Wildlife & Parks to Dir., Nat'l Park Serv. (Feb. 17, 2022)).

[13] Docket 52 at 1.

[14] Docket 50 at 5.

[15] *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

Case No. 3:20-cv-00209-SLG, *Alaska Wildlife Alliance, et al. v. Haaland, et al.*
Order re: Motion to Stay
Page 4 of 14

judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court."[16]

In deciding whether to grant a stay, the Ninth Circuit weighs "the competing interests which will be affected," which include: (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."[17] "The proponent of the stay bears the burden of establishing its need"[18] and "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay . . . will work damage to some one else."[19] "Generally, stays should not be indefinite in nature" and "'should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time.'"[20]

---

[16] *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979).

[17] *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

[18] *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

[19] *Landis*, 299 U.S. at 255.

[20] *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (quoting *Leyva*, 593 F.2d at 864).

Case No. 3:20-cv-00209-SLG, *Alaska Wildlife Alliance, et al. v. Haaland, et al.*
Order re: Motion to Stay
Page 5 of 14
Case 3:20-cv-00209-SLG   Document 61   Filed 03/15/22   Page 5 of 14

## DISCUSSION

### I. Prejudice to Plaintiffs

Defendants assert that the requested stay would not prejudice Plaintiffs because: (1) "reviewing the merits of the 2020 rule is consistent with Plaintiffs' claims in this litigation"; (2) staying this litigation for an additional three months "would not alter the status quo that has already been in place for over eighteen months"; (3) "any specific concerns that Plaintiffs have about the effects of state-authorized hunting practices during the pendency of the stay can be addressed on a case-by-case basis through NPS' retained closure authority"; and (4) "Plaintiffs' generalized concerns about the effect the 2020 rule could have on predator populations or behavior is not supported by available data" from the Environmental Assessment for the 2020 rule.[21]

Plaintiffs disagree, noting that a significant amount of time has passed since this action was initiated—in part due to Defendants' numerous extension requests—and that the 2020 rule will remain in effect during the stay and continue "causing harm to Plaintiffs' concrete and specific interests."[22] They also contend that the requested stay would be prejudicial because it "fall[s] in the middle of summary judgment briefing" and would "overlap[] with the seasons for challenged

---

[21] Docket 50 at 9–10.

[22] Docket 54 at 3–4, 6, 8–9.

Case No. 3:20-cv-00209-SLG, *Alaska Wildlife Alliance, et al. v. Haaland, et al.*
Order re: Motion to Stay
Page 6 of 14
Case 3:20-cv-00209-SLG   Document 61   Filed 03/15/22   Page 6 of 14

hunting practices."[23] Plaintiffs emphasize that these concerns are particularly acute in light of the uncertain timeline for a new rulemaking; "[t]here is no assurance that the Service will issue a final rule, or that the proposed rule will ultimately address the issues raised by Plaintiffs in this litigation—and those events will certainly not come to pass by June 15, given that the Service commits only to inter-agency review of a proposed rule by June 1."[24]

Plaintiffs also contest Defendants' assertion that concerns about state-authorized hunting practices during the pendency of the stay can be addressed on a "case-by-case basis through the [NPS's] retained closure authority."[25] This contention should be disregarded, Plaintiffs maintain, because it "relies on unspecified future administrative processes that the [NPS] has not committed to at this time" and because case-by-case closures are not an adequate mechanism to address the harm at issue in this action.[26] Moreover, Plaintiffs contend that Defendants cannot claim a stay is justified based on the NPS's conclusion that the 2020 rule does not harm wildlife because that matter is directly at issue in this litigation.[27]

---

[23] Docket 54 at 4, 7.

[24] Docket 54 at 7–8 ("If the review process does not resolve all of Plaintiffs' claims, Defendants are essentially asking Plaintiffs to continue experiencing harm so that at an unspecified future date, once a new final rule is issued, they may re-initiate litigation in hopes of remedy.").

[25] Docket 54 at 9 (citing Docket 50 at 10).

[26] Docket 54 at 9–10.

[27] Docket 54 at 10.

Case No. 3:20-cv-00209-SLG, *Alaska Wildlife Alliance, et al. v. Haaland, et al.*
Order re: Motion to Stay
Page 7 of 14
Case 3:20-cv-00209-SLG   Document 61   Filed 03/15/22   Page 7 of 14

## II. Hardship to Defendants

The Court finds that there is a "fair possibility" that the stay will harm Plaintiffs; thus, Defendants must "make out a clear case of hardship or inequity in being required to go forward."[28] Defendants contend that "NPS would be prejudiced by being forced to defend a rule that it is considering revising," particularly because the February 17 memorandum requested that NPS focus its reconsideration on "issues that are at the core of this litigation."[29] They note that "NPS is considering seeking remand rather than filing an opposition brief defending the 2020 rule" should Defendants "be required to file an opposition brief . . . while NPS is reassessing the 2020 rule."[30] Thus, Defendants maintain, if NPS "conclude[s] that portions of the [2020] rule should be left undisturbed, NPS would be prejudiced from the denial of a stay as its time to file a merits opposition defending those portions of the rule could have passed."[31]

Defendants point to *Sequoia Forestkeeper & Earth Island Institute v. U.S. Forest Service*, an unpublished case in which the district court granted a stay when the agency would be "required simultaneously to brief dispositive motions for summary judgment on [a] withdrawn [Environmental Assessment] and to prepare

---

[28] *Landis*, 299 U.S. at 255.

[29] Docket 50 at 8.

[30] Docket 55 at 3.

[31] Docket 55 at 4.

Case No. 3:20-cv-00209-SLG, *Alaska Wildlife Alliance, et al. v. Haaland, et al.*
Order re: Motion to Stay
Page 8 of 14

[a] revised [Environmental Assessment]."[32] Here, however, Defendants have not withdrawn the 2020 rule, and it is uncertain whether or how long that rule will remain in place. Defendants also cite *Acura of Bellevue v. Reich*, in which the Ninth Circuit stated that "[a]llowing judicial review in the middle of an agency review process unjustifiably interferes with the agency's right to consider and possibly change its position during its administrative proceedings."[33] Defendants' reliance on this case, too, is misplaced as it did not involve a stay but rather concerned issues of ripeness and exhaustion of administrative remedies[34]—here, by contrast, Plaintiffs are challenging a final agency action.

Plaintiffs assert that Defendants have not "[met] the high burden the party requesting a stay bears" and that staying this litigation would merely "save the agency the inconvenience of taking a position."[35] They suggest that "[i]f Defendants are convinced the 2020 Rule is flawed and no longer wish to defend it, they could simply admit legal error and move this court to remand the rule with vacatur."[36]

---

[32] Docket 50 at 8 (quoting *Sequoia Forestkeeper & Earth Island Inst. v. U.S. Forest Serv.*, Case No. CV F 07-1690 LJO DLB, 2008 WL 2131557, at *5 (E.D. Cal. May 21, 2008)).

[33] Docket 50 at 5 (quoting *Acura of Bellevue v. Reich*, 90 F.3d 1403, 1409 (9th Cir. 1996)).

[34] *See Acura of Bellevue*, 90 F.3d at 1405, 1409.

[35] Docket 54 at 12.

[36] Docket 54 at 12.

Case No. 3:20-cv-00209-SLG, *Alaska Wildlife Alliance, et al. v. Haaland, et al.*
Order re: Motion to Stay
Page 9 of 14
Case 3:20-cv-00209-SLG   Document 61   Filed 03/15/22   Page 9 of 14

## III. Judicial Efficiency

Defendants maintain that the requested stay would promote judicial efficiency because NPS is currently reconsidering the 2020 rule and thus the stay "would conserve judicial resources that would otherwise be wasted on litigation that is likely to become prudentially unripe or moot."[37] Citing *American Petroleum Institute v. EPA*, 683 F.3d 382 (D.C. Cir. 2012), and *Wyoming v. Zinke*, 871 F.3d 1133 (10 Cir. 2017), Defendants assert that "[w]hen an agency has published a proposed revisionary rule, courts often refuse to exercise jurisdiction over challenges to the existing rule on prudential ripeness grounds."[38] However, both those cases involved circumstances in which a proposed rule rescinding or significantly revising the challenged rule had already been published.[39] Here, the NPS has yet to publish a proposed rule, and it is unclear at present whether that rule would rescind or meaningfully revise the 2020 rule. Defendants also suggest that a stay would "potentially narrow[] the scope of the disputes remaining in this litigation" because "[i]n conjunction with [the] reassessment, NPS is currently evaluating the positions it may take on the merits in this litigation or, alternatively,

---

[37] Docket 50 at 6–7.

[38] Docket 50 at 7.

[39] *See Am. Petroleum Inst.*, 683 F.3d at 386; *Zinke*, 871 F.3d at 1142.

Case No. 3:20-cv-00209-SLG, *Alaska Wildlife Alliance, et al. v. Haaland, et al.*
Order re: Motion to Stay
Page 10 of 14

seeking remand of [the 2020 rule]."[40]  Again, however, this contention is somewhat speculative given that the outcome of the NPS's reassessment is unknown.

Plaintiffs, by contrast, assert that "[c]ontinued delay in this case is not efficient" because "the [NPS] has not rescinded the 2020 Rule or admitted legal error, has not committed to doing so, and has not committed to a timeline for concluding a new rulemaking process."[41]  They contend that Defendants are in essence asking for an indefinite stay because "Defendants would need to continue requesting stays after June 15 while the agency engages in notice and comment rulemaking, deliberates and, eventually, adopts a final rule—which may or may not resolve all of Plaintiffs' concerns."[42]  Moreover, Plaintiffs assert that "the [NPS] has failed to provide Plaintiffs with sufficient substantive information to enable them, or the Court, to understand which aspects of the challenged regulations would be addressed by this future rulemaking."[43]

## IV. Findings

The Court finds that the "three competing interests which will be affected by the granting or refusal to grant a stay" weigh in favor of denial.[44]  First, further delay of this already-lengthy litigation will be prejudicial to Plaintiffs' interests.  The 2020

---

[40] Docket 50 at 2.

[41] Docket 54 at 13.

[42] Docket 54 at 13.

[43] Docket 54 at 4.

[44] *See Lockyer*, 398 F.3d at 1110 (quoting *CMAX*, 300 F.2d at 268).

Case No. 3:20-cv-00209-SLG, *Alaska Wildlife Alliance, et al. v. Haaland, et al.*
Order re: Motion to Stay
Page 11 of 14

rule, which Plaintiffs allege is harmful to them, will remain in place during a stay, and this harm would not be alleviated by the opportunity to provide comments on the eventual proposed rule or the fact that NPS could theoretically exercise its closure authority on a case-by-case basis to limit some of the disputed hunting practices.

Second, Defendants have failed to meet their burden of showing that they will clearly face hardship if litigation proceeds forward at this time. Defendants appear to contend that simultaneously defending the 2020 rule while the NPS reassesses it could force them to take inconsistent positions, but this contention is speculative given that Defendants have not committed to rescinding or significantly revising the rule in any manner. Defendants also assert that they will be prejudiced if the requested stay is denied and NPS decides to seek remand rather than filing an opposition brief because they will lose the opportunity to defend portions of the rule that NPS may later decide to leave undisturbed. The Court does not find this contention compelling given that the decision to seek remand is completely within Defendants' discretion, and Defendants have had over 18 months since this litigation began in which to prepare their defense of the 2020 rule.

Third and finally, the "interest in the orderly course of justice" weighs in favor of denying the stay because the timeline and ultimate outcome of NPS's reassessment of the 2020 rule remains uncertain.[45] As Plaintiffs note, Defendants

---

[45] *See Dependable Highway Express, Inc.*, 498 F.3d at 1066 (providing that a stay "should not

Case No. 3:20-cv-00209-SLG, *Alaska Wildlife Alliance, et al. v. Haaland, et al.*
Order re: Motion to Stay
Page 12 of 14

Case 3:20-cv-00209-SLG   Document 61   Filed 03/15/22   Page 12 of 14

"provide[] no timeline or commitment to conclude rulemaking by a certain date."[46] Notice-and-comment rulemaking is often a lengthy process—the 2020 rule at issue in this litigation, for example, was proposed on May 22, 2018 and did not take effect until July 9, 2020, over two years later.[47] Particularly because the February 17 memorandum only requests that the NPS submit a proposed rule for OMB review by June 1,[48] Defendants have not offered a specific date on which the proposed rule will be published, let alone a clear timeline for the entire rulemaking process. Moreover, because Defendants have not committed to rescinding or significantly revising the 2020 rule—only "reassessing" it—there is also no guarantee that staying the case until the proposed rule is drafted will ultimately narrow the scope of this litigation.[49]

In sum, Defendants' vague commitment to "reassessing" the 2020 rule by June 1 is insufficient to justify the requested stay. Plaintiffs would be prejudiced

---

be granted unless it appears likely the other proceedings will be concluded within a reasonable time" (quoting *Leyva*, 593 F.2d at 864)).

[46] Docket 54 at 4.

[47] *Compare* Alaska; Hunting and Trapping in National Preserves, 83 Fed. Reg. 23,621 (May 22, 2018), *with* 2020 Rule, 85 Fed Reg. at 35,181. The 2015 rule was proposed on September 4, 2014, and did not take effect until November 23, 2015. *Compare* Alaska; Hunting and Trapping in National Preserves, 79 Fed. Reg. 52,595 (Sept. 4, 2014), *with* 2015 Rule, 80 Fed Reg. at 64,325.

[48] *See* Docket 52 at 1 (requiring the NPS to "transmit, by June 1, 2022, a proposed rule to the Office of Management and Budget for publication").

[49] *Cf. Zinke*, 871 F.3d at 1142 (granting stay when the agency "clearly expressed its intent to rescind [the regulation]" by "issu[ing] notice of its proposed rule to entirely rescind the disputed [regulation]").

Case No. 3:20-cv-00209-SLG, *Alaska Wildlife Alliance, et al. v. Haaland, et al.*
Order re: Motion to Stay
Page 13 of 14
Case 3:20-cv-00209-SLG   Document 61   Filed 03/15/22   Page 13 of 14

by further delay of this litigation, and it is unclear what hardship Defendants would face or whether the requested stay would promote judicial efficiency in light of the uncertain timeline and outcome of the process laid out in the February 17 memorandum.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Stay is DENIED without prejudice.[50]  Per the Court's previous orders at Docket 46 and Docket 59, Defendants' merits briefing in opposition to Plaintiff's opening brief is due **14 days from the date of this order**, and Defendant-Intervenors will have **14 days from that date** to file supplemental summary judgment briefing.[51]

DATED this 15th day of March, 2022, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[50] This order does not foreclose a future motion to dismiss based on prudential mootness if and when appropriate.

[51] In their response in non-opposition to the instant motion, Defendant-Intervenors request that the Court "provide additional time and pages for Defendant-Intervenor summary judgment briefing." Docket 56 at 2. Defendant-Intervenors may submit this request as a separate motion if their concerns remain in light of the revised briefing schedule set forth above.

Case No. 3:20-cv-00209-SLG, *Alaska Wildlife Alliance, et al. v. Haaland, et al.*
Order re: Motion to Stay
Page 14 of 14
Case 3:20-cv-00209-SLG   Document 61   Filed 03/15/22   Page 14 of 14